UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **JERELL LEWIS** | **CASE NO. 2:17-CV-01424** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **TAYLOR A GASKIN ET AL** | **MAGISTRATE JUDGE KAY** |

### MEMORANDUM RULING

Before the Court is a "Motion for Partial Summary Judgment" (Rec.19) wherein Defendant, Gulf Coast Services of SWLA, LLC ("Gulf Coast") moves for partial summary judgment in its favor. Gulf Coast seeks to dismiss with prejudice Plaintiff, Jerell Lewis' claims and claims of Plaintiff-in-cross-claim, Genesis Marine, LLC.

### FACTUAL STATEMENT

On December 21, 2016, Taylor Gaskin was operating a taxicab; Plaintiff, Jerell Lewis was a guest passenger.[1] Lewis, who was employed as a tankerman aboard the vessel BOB DEERE maintains that he was injured when Gaskin was operating the taxi and rear ended another vehicle. Lewis brings this action under the Jones Act against his employer Genesis Marine, LLC d/b/a Genesis Energy ("Genesis") for failure to provide a safe place to work. Lewis also brings claims against Gaskin and his alleged employer, Gulf Coast pursuant to *respondeat superior*.

Gulf Coast argues that Gaskin is an independent contractor, and thus it cannot be responsible for the alleged negligence of Gaskin. Lewis and Genesis also bring claims of

---

[1] Plaintiff's Complaint, Rec. 1; Gulf Coast Answer, Rec. 3.

direct negligence against Gulf Coast for negligently hiring and negligent training of Gaskin.

Gulf Coast did not pay Taylor Gaskin a salary. Gulf Coast and Gaskin entered into a taxicab lease agreement on October 12, 2016, wherein Gulf Coast agreed to provide Gaskin with access to a taxicab fleet.[2] The Lease Agreement required Gulf Coast to maintain a policy of liability insurance for the taxicabs; the premium was paid for by Gulf Coast with Gaskin listed as one of the drivers.[3] Gulf Coast owned and maintained the taxicab which Gaskin used, and paid for all the gas needed to fuel the taxicabs.[4] At the end of each shift, Gaskin returned the cab to Gulf Coast's depot. Gulf Coast provided Gaskin with a radio dispatch service to generate revenue and could terminate the relationship at-will with 2 days written notice. Gaskin could also procure his own clients without the radio dispatch service. At the end of each week, Gaskin would give Gulf Coast all the revenue that he generated during that period. Gulf Coast would then deduct the amount that was due to it and issue a company check to Gaskin for the remainder.[5]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a

---

[2] Gulf Coast exhibit 1.
[3] Gulf Coast exhibit 2, Jordan Page depo., p. 29:17-24; p. 30, 21-25; Gulf Coast exhibit 1.
[4] Gulf Coast exhibit 2, Page depo., p. 20:1-15; 79:21-80:7.
[5] Id. p. 48:20 – p. 49:8, p. 76:16 – 77:5.

genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## **LAW AND ANALYSIS**

Gulf Coast moves for partial summary judgment to dismiss the claims against it. Gulf Coast argues that it is not Gaskin's employer and therefore cannot be held liable. Genesis argues that (1) Gaskin was not an independent contract, but Gulf Coast's

employee, (2) there are genuine issues of material fact that exist as to whether Gaskin was an independent contractor of Gulf Coast's employer, and (3) Gulf Coast is directly liable to Lewis for its own negligence regarding the negligent hiring and training of Gaskin. In addition, Genesis requests that the motion be denied because Gaskin, a named party in this case, has not been deposed such that it has been unable to obtain facts essential to justify its opposition.

Following the incident, Genesis started to pay and continues to pay Lewis maintenance and cure. Genesis has filed a cross-claim against Gulf Coast asking to be indemnified for any amount that it may be found liable to pay to Lewis on the basis that Gulf Coast is responsible for Gaskin's negligent driving under the doctrine of *respondeat superior* and for its own actions in that it negligently hired and trained Gaskin.

The first issue in this motion is whether or not Taylor Gaskin is an employee of Gulf Coast or an independent contractor. The Louisiana Supreme Court has decided that the following factors are relevant in determining whether the relationship of principal and independent contractor exists: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ non-exclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking agreed upon; and (5) the duration of the work is for a specific time and not subject to termination or discontinuance at the will

or either side without a corresponding liability for its breach. *Hickman v. Southern Pacific Transport Co.,* 262 La. 102, 117, 262 So.2d 385, 390-391 (La. 1972).

*The absence of Taylor Gaskin*

Genesis informs the Court that the whereabouts of Taylor Gaskin is unknown and therefore they have been unable to depose him. The Court notes that this lawsuit was filed November 1, 2017 and the instant motion for partial summary judgment was filed June 22, 2019. The Court granted a motion for extension of time on July 11, 2019, and reset the deadline for responses to September 20, 2019.[6] On September 18, 2019, the Court granted a second motion for extension of time to file a response to the motion for partial summary judgment.[7] The Court granted a third motion for extension of time on January 21, 2020 which set a deadline to respond to April 20, 2020.[8] The purpose of the extensions was to depose Taylor Gaskin who did not appear for the first scheduled deposition, and now his whereabout are unknown, even by his own attorney. The Court finds that Defendant Gaskin's absence and the failure of his counsel to locate him does not justify denial of the motion for partial summary judgment. The Court has given the parties ample time and opportunity to find Gaskin.

*Employer/employee relationship*

The determination of an employer/employee relationship is fact-specific and made on a case-by-case basis; the principal test in determining "whether a relationship is that of independent contractor or that of mere servant" is "whether, from the nature of the

---

[6] Rec. 32.
[7] Rec. 40.
[8] Rec. 47.

relationship," the employer retains the right to exercise "supervision and control" over the work." *Hickman v. S. Pac. Transp. Co.*, 262 La.102, 117-18, 262 So.29 385, 390-91 (1972).

An independent contractor contracts with the principal for the performance of specific units of work "to be done according to the independent contractor's own methods, without being subject to the control and direction, in the performance of the service, of his employer, except as to the result of the services to be rendered." *Id.* In addition to the rights of control, other factors in determining the nature of the relationship include "selection and engagement, payment of wages, and the power of dismissal." *Hendricks v. United Cab. Inc.,* 687 So.2d 610, 611 (La. App. 4th Cir. 1997).

The control over the work reserved by the "employer" is not the supervision and control which is actually exercised which is significant, but whether from the nature of the relationship, the rights to do so exists. *Amyx v Henry &Hall,* 79 So.2d 483 (1955).

Gaskin, the Lessee, entered into the Lease Agreement ("Agreement") which stated that he was an "independent contractor."[9] Gaskin leased the taxicab which had a Gulf Coast insignia painted on it. The Agreement allowed him to pick up a taxicab with a full tank of gas and return the cab with a full tank of gas.[10] The Lessor was responsible for maintaining the cab mechanically.[11]

The Agreement also provided a radio dispatching service as a means of referring prospective passengers, but the Lessee had no obligation to respond to radio calls or to pick

---

[9] Exhibit 2, ¶ 1, Rec. 53-1.
[10] Id.
[11] Id. ¶ 2.

6

up passengers referred to him by radio.[12] Lessee was not obligated to report his location to Lessor or to remain in any specific place at any fixed hour; Lessee had to comply with applicable city laws and/or ordinance related to passenger pickup and delivery.[13]

The Agreement further provided that the relationship between that of Lessor and Lessee was not an "employer-employee, principal-agent, or master-servant, either expressed or implied, but that the relationship of the parties is strictly that of Lessor-Lessee, the Lessee being free from interference or control on the part of the Lessor in the operation of the taxicab."[14] Furthermore, the Lessee was not eligible for federal or state unemployment benefits, the Lessor was not responsible for state or federal withholding taxes, or paying any contributions under the Federal Insurance Act.[15] The Lessor furnished the liability insurance, but was not responsible nor liable for any injury to Lessee resulting from the use or operation of the taxicab.[16] The Lessor required the Lessee to pay a $250 security deposit to insure the return of the taxicab in the same condition. The rental rate for the cab required the Lessee to pay the Lessor $1.20 per loaded mile and $2.85 per pick up. The terms of the lease were for successive 30-day periods; either party could terminate the lease two day prior to the termination date.

Gulf Coast cites *Franklin v. Dick*, 224 So.3d 1130 (La. App. 2d Cir. 2017) wherein the appellate court found that there was no employer/employee relationship involved in a lease agreement between the taxicab owner and the Lessee (driver) of the taxicab. Plaintiff

---

[12] Id. ¶ 3.
[13] Id.
[14] Id.
[15] Id.
[16] Id. ¶ 4.

7

argues that the *Franklin* case is distinguishable because in *Franklin*, the lease agreement provided that the Lessee would pay a fixed daily rate as opposed to a percentage of revenue. In *Franklin*, the cab driver also used the dispatch service for some of his fares, but had built up his own clientele over the years. In *Franklin*, the cab driver had no set hours and the court determined that the Lessor was in the business of leasing cabs.

Under the factors in *Hickman*, there is a valid contract between the Lessor and Lessee. The second factor is the work being done is of an independent nature such that the contract may employ nonexclusive means in accomplishing it. Even though Gulf Coast provided the call service, there was no prohibition to the driver from getting own clients. The third factor is the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods, without being subject to the control and direction of the principal, except as to the result of the services to be rendered. There is no evidence that Gaskin was prohibited from obtaining his fares any way he wanted, nor is there evidence of a specific work schedule, other than he would work 6 (six) 10-12 hours periods per week.[17] Furthermore, there is no evidence that Gulf Coast had control over how Gaskin would obtain his fares.

The fourth factor is that there is a specific price for the overall undertaking agreed upon. The Agreement provides that the Lessee will pay to the Lessor, $1.30 per loaded mile plus $2.85 per pick up.[18] The fifth factor is the duration of the work is for a specific time and not subject to termination or discontinuance at the will of either side without a

---

[17] Lease Agreement, Schedule A, Rec. 53-1.
[18] Id.

corresponding liability for its breach. The Agreement provided that there would be 30-day successive periods unless either party to the Agreement gave 2 days written notice.

The ability to control Gaskin is the most significant factor. The Agreement does not provide a specific work schedule or dictate how Gaskin was to perform his job. It does not give him a quota that he must reach, nor does it dictate how he must perform his work as a taxicab driver.

These facts are not in dispute. As a matter of law, the facts as presented establish that there was not an employer-employee relationship between Gaskin and Gulf Coast. Therefore, Gulf Coast cannot be held vicariously liable for the damages allegedly caused by Gaskin.

*Negligent hiring and negligent training*

Plaintiff and Genesis claim that Gulf Coast committed acts of negligence by negligent hiring and negligent training. Gulf Coast has presented the affidavit of Jordan Page, owner of Gulf Coast which establishes that Gulf Coast requires its drivers to hold a valid Louisiana chauffeur's license and a city permit, and to submit to a background check. The Court agrees that Gulf Coast is not Gaskin's employer, and thus could not be liable for hiring Gaskin as an employee. However, Louisiana case law recognizes that "one who hires an irresponsible independent contractor may be independently negligent. In determining whether a principal is "negligent for hiring an independent contractor, the court must consider the principal's knowledge at the time of the hiring." *Dragna v. A&Z Transp. Inc.,* 2015 U.S. Dist. LEXIS 19766 at 24 (M.D. La. Feb. 19, 2015). As noted by Plaintiff, Gulf Coast did not have in place any additional internal policies to investigate a driver's

9

competency and character or to test and/or train its drivers.[19] The Court agrees with Plaintiff and Plaintiff-in-cross-claim that Gulf Coast should ensure proper training and hiring even as to an independent contractor. Accordingly, the motion for partial summary judgment will be denied as to Plaintiff's claims and Plaintiff-in-cross-claims against Gulf Coast.

## **CONCLUSION**

For the reasons set forth above, the motion for partial summary judgment will be granted to the extent that the Court finds that Taylor Gaskin was an independent contractor, but denied as to Plaintiff's claims and Plaintiff-in-cross-claims against Gulf Coast as to negligent hiring and negligent training of Taylor Gaskin as an independent contractor.

**THUS DONE AND SIGNED** in chambers on this 26th day of May, 2020.

*[signature]*
**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**

---

[19] Plaintiff's exhibit 2, p. 24:1-25:18; p. 27:5 – 28:15; p. 28:24 – 29:10.